FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2008 APR 25 P 3: 11

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CAPITAL AVIATION, INC., a Virginia corporation, 44081 Pipeline Plaza Suite 220 Ashburn, VA 20147, <br><br> Plaintiff, <br><br> v. <br><br> ECA PROGRAM, PLC, also known as EUROPEAN COMBINED AIRCRAFT, 29 Avenue Monterey L2163 Luxembourg City Luxembourg, <br><br> **SERVE:** Secretary of the Commonwealth 830 East Main Street, 14th Floor Richmond, VA 23219, <br><br> Defendant. | Civil Action No. 1:08CV401 LO/JFA <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff CAPITAL AVIATION, INC. ("CAI"), by counsel, and for his Complaint against Defendant ECA PROGRAM PLC, also known as EUROPEAN COMBINED AIRCRAFT ("ECA"), states as follows:

## PARTIES

1. CAI is a Virginia corporation with its principal place of business in Virginia. Its corporate headquarters is located at 4401 Pipeline Plaza, Suite 220, Ashburn, Virginia 20147.

2. Upon information and belief, ECA is a Luxembourg corporation with its principal place of business in Luxembourg City, Luxembourg. Its corporate headquarters is located at 29 Avenue Monterey, L2163, Luxembourg City, Luxembourg.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action because this is an action between a United States corporation and a foreign citizen in which the amount in controversy exceeds the value of $75,000, exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332(a).

4. Venue is proper in this district under 28 U.S.C. § 1391 because ECA transacted business with this district, which is sufficient to subject it to personal jurisdiction.

5. In addition, a substantial part of the events or omissions giving rise to CAI's claims occurred in this district.

6. ECA is also subject to the personal jurisdiction of this Court because it consented to personal jurisdiction in this Court in writing.

## FACTUAL ALLEGATIONS

7. On or about April 7, 2008, CAI and ECA entered into the ACMI Agreement ("the Agreement"), whereby CAI contracted to charter Mi-8MTV helicopters from ECA.

ECA also agreed to provide flight crews to operate the helicopters and maintenance personnel to maintain the helicopters. A copy of the Agreement between CAI and ECA is attached hereto as Exhibit "A."

8. CAI entered into the Agreement with ECA in order to perform a contract that CAI had signed with the United States Government to supply freight helicopters to soldiers in Afghanistan.

9. From the outset, ECA has been represented by Mr. Melville ten Cate (who is based in Europe) and Mr. Rocky Kendall (who is based in the United States).

10. Beginning in March 2008, Nick Franzen, CAI's Contracts Officer, engaged in discussions with ECA representatives for the purpose of chartering helicopters from ECA to enable CAI to supply the freight helicopters required by CAI's contract with the United States Government.

11. CAI selected ECA based on ECA's representations to CAI that it was in the business of brokering the delivery of aircraft and that it could deliver the helicopters.

12. In reliance on representations by ECA's representatives that ECA could supply the necessary helicopters, CAI not only entered into the Agreement with ECA but also advanced to ECA a deposit of $1.66 million for the first month of freight and transport costs.

13. ECA requested that the $1.66 million deposit be wired to Dexia Bank, IBAN: BE26 77959529429, BIC: GKCCBEBB.

14. ECA agreed that the helicopters would be ready to complete missions within the timeframe agreed to between CAI and the United States Government.

15. Section 4 of the Agreement specifically required ECA to charter the aircraft type and capacity according to the price and payment schedule in Appendix A.

16. After receipt of CAI's wire transfer of the $1.66 million deposit, Mr. ten Cate represented to CAI that ECA had forwarded funds to ECA's subcontractors to ensure transit of the helicopters.

17. Despite requests by CAI, ECA was unable to deliver the requisite paperwork to identify the aircraft ECA had claimed to secure under the Agreement, causing CAI to become suspicious that ECA would not be able to perform.

18. When pressed by CAI, ECA represented that it had procured four freight helicopters (Tail Nos. UN 27183, UN 25128, UN 21024, and UN 27184) from a Kazakhstan company Burundaiavia/Altair Air.

19. Shortly after the $1.66 million deposit was wired to ECA's account at Dexia Bank, CAI learned that ECA had not in fact procured the helicopters as ECA had represented. CAI also learned that no one at ECA had procured any helicopters required by CAI to comply with its U.S. Government contract.

20. Based upon the wire transfer records ECA supplied to CAI, ECA apparently wired at least a portion of the CAI deposit to a "Maitre Verreaux" whom CAI now knows to be a Luxemburg lawyer named Fabian Verreaux who serves as the Court-appointed liquidator of a bankrupt entity of Mr. ten Cate's known as "Ten Cate Industries Holdings, SA."

21. CAI is not familiar with Ten Cate Industries Holdings, SA and has no relationship with this entity.

22. Ten Cate Industries Holdings, SA was declared bankrupt on March 27, 2007, five (5) months before ECA was incorporated and long before the Agreement was signed.

23. There is no legitimate reason for ECA to divert the CAI deposit to a Court-appointed liquidator for a bankrupt entity belonging to an ECA principal.

24. ECA's diversion of the CAI deposit is indicative of ECA's plan to defraud CAI.

25. Ultimately, ECA failed to deliver the helicopters as represented.

26. ECA's failure to deliver the helicopters as represented caused CAI to breach its contract with the U.S. Government.

27. Because ECA did not perform as represented, CAI requested the return of the $1.66 million deposit.

28. Neither Mr. Kendall, Mr. ten Cate, nor anyone else at ECA has complied with CAI's demand for return of the $1.66 million.

29. For the reasons stated above, ECA currently owes CAI at least $1.66 million, plus interest, as well as such other damages determined at trial, including but not limited to damages associated with CAI's breach of its contract with the United States Government.

## COUNT I
### (Declaratory Judgment)

30. CAI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 29 of the Complaint.

31. There exists between the parties an actual controversy within the Court's jurisdiction.

32. Under 28 U.S.C. §2201 and Fed. R. Civ. P. 57, the Court may declare the rights and legal relations between the parties.

33. Among other things, CAI seeks a declaration that ECA induced CAI to enter into the contract based on misrepresentations, that if the contract is not rescinded for fraudulent inducement ECA breached the Agreement, and that CAI is entitled to return of its $1.66 million deposit, plus interest, as well as compensation for its damages, expenses, and costs incurred as a result of ECA's failure to deliver the helicopters as represented.

## COUNT II
### (Fraudulent Inducement)

34. CAI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 29 of the Complaint.

35. Prior to April 7, 2008, ECA made a series of representations to CAI regarding ECA's procurement of helicopters so that CAI could perform a contract with the United States Government.

36. Based on ECA's representations, CAI entered into the Agreement and advanced to ECA a deposit of $1.66 million for the first month of freight and transport costs.

37. ECA's representations were false, in that ECA either could not or would not supply the necessary helicopters, and, in fact, ECA had not procured the freight helicopters.

38. ECA's representations were material.

39. ECA's representations induced CAI to enter into the Agreement and advance to ECA a deposit of $1.66 million for the first month of freight and transport costs.

40. But for the representations by ECA, CAI would not have authorized the transfer of the $1.66 million deposit to ECA.

41. CAI relied on and had a right to rely on ECA's representations.

42. CAI is entitled to rescission of the Agreement and the return of its $1.66 million deposit, plus interest.

43. As a direct result of ECA's actions, CAI has been, and continues to be, harmed, and to date, CAI has suffered damages comprised of the known, current, direct losses attributed to ECA's acts and omissions of at least $1,660,000, plus interest.

## COUNT III
### (Breach of Contract)

44. CAI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 29 of the Complaint.

45. On or about April 7, 2008, CAI and ECA entered into the Agreement, pursuant to which CAI advanced to ECA a deposit of $1.66 million for the first month of freight and transport costs of certain helicopters.

46. The Agreement required ECA to deliver helicopters so that they could be in place in Afghanistan to begin operations on April 16, 2008.

47. ECA was aware that CAI needed the helicopters to perform a contract CAI had been awarded with the United States Government.

48. ECA failed to deliver the four helicopters in accordance with the Agreement, either on April 16, 2008 or at any other time.

49. ECA's failure to deliver the four helicopters constituted a material breach of the Agreement.

50. ECA's failure to deliver the four helicopters caused CAI to breach CAI's contract with the United States Government.

51. CAI fully performed its obligations under the contract.

52. As a direct result of ECA's actions, CAI has been, and continues to be, harmed, and to date, CAI has suffered damages comprised of the known, current, direct losses attributed to ECA's acts and omissions of at least $1,660,000, plus interest, as well as such other damages determined at trial, including but not limited to damages associated with CAI's breach of its contract with the United States Government..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Capital Aviation, Inc. requests this Court to enter judgment against Defendant ECA Program PLC, a/k/a European Combined Aircraft and grant it the following relief in its favor:

1. An Order declaring that ECA induced CAI to enter into the contract based on misrepresentations, that if the contract is not rescinded for fraudulent inducement ECA breached the Agreement, and that CAI is entitled to return of its $1.66 million deposit, plus interest, as well as compensation for its expenses and costs incurred as a result of ECA's failure to deliver the helicopters as represented;

2. An Order granting rescission of the contract for fraudulent inducement and return of all monies paid to ECA of at least $1,660,000, plus interest;

3. An Order awarding breach of contract damages for the harm suffered by Capital Aviation Inc. comprised of the known, current, direct losses attributed to ECA's acts and omissions of at least $1,660,000, plus interest, as well as such other damages determined at trial, including but not limited to damages associated with CAI's breach of its contract with the United States Government;

4. An Order awarding Capital Aviation Inc.'s attorneys' fees, costs, and expenses incurred in pursuing this action; and

5.  Such other and further relief as this Court may deem appropriate.

Dated: April 25, 2008

CAPITAL AVIATION, INC.
By Counsel

_____
Attison L. Barnes, III (Va. Bar No. 30458)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: (202) 719-7000
Counsel for Capital Aviation, Inc.

12835553.2